STEVEN G. KALAR
Federal Public Defender
Northern District of California
ELLEN LEONIDA
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700
Facsimile: (415) 436-7706
Email: Ellen_Leonida@fd.org


Counsel for Defendant Talley

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>v.<br><br>CECIL TALLEY,<br><br>DEFENDANT. | CR 19–605 RS<br><br>MOTION, NOTICE OF MOTION, AND MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE<br><br><br>HEARING DATE:   JUNE 16, 2020<br>HEARING TIME:   2:30 P.M. |

TO:   UNITED STATES OF AMERICA, PLAINTIFF; DAVID L. ANDERSON, UNITED STATES ATTORNEY; CHRISTINA LIU, ASSISTANT UNITED STATES ATTORNEY

PLEASE TAKE NOTICE that counsel for defendant, Cecil Talley, hereby moves this Court for an order suppressing all fruits of the warrantless search of his car. Specifically, Mr. Talley moves to suppress:

1)   a Smith and Wesson pistol;

2)   all ammunition;

3)   all cell phones and information derived through analysis of seized phones; and

4)   all biological evidence collected.

1    This motion is based on this notice and motion, the following memorandum of points and

2   authorities and accompanying exhibits, the Fourth Amendment to the United States Constitution, all

3   other applicable constitutional, statutory, and case authority, and such evidence and argument as may

4   be presented at the hearing of this motion.

5   Dated: May 12, 2020

6                                                              Respectfully submitted,

7                                                              STEVEN G. KALAR
                                                               Federal Public Defender
8
                                                                    /S/
9                                                              ELLEN V. LEONIDA
10                                                             Assistant Federal Public Defender

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO SUPPRESS EVIDENCE
*U.S. V. TALLEY*, CR 19–605 RS

1

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

3  Cecil Talley was pulled over for driving his car in a bus lane in San Francisco on July 24, 2019.

4  He pulled over promptly and complied with all the officers' demands. Mr. Talley presented a valid

5  driver's license, his car was legally registered, and he had proof of insurance. Nonetheless, San

6  Francisco Police Officers ordered Mr. Talley out of his car and searched it, ultimately finding a

7  firearm. The officers later explained that they searched the car based solely on the presence of a small,

8  closed container of marijuana in the center console.

9  The state of California, however, has legalized the transportation of small amounts of marijuana

10 in precisely the type of container that was found in Mr. Talley's car. Cal. Health & Safety Code §

11 11362.1; *People v. Shumake*, __Cal. Rptr. 3d at __, 2019 WL 8128736. The statute legalizing

12 possession and transportation of less than a gram of marijuana also specifically provides that

13 "[c]annabis and cannabis products involved in any way with conduct deemed lawful by this section

14 are not contraband nor subject to seizure, and *no conduct deemed lawful by this section shall constitute*

15 *the basis for detention, search or arrest.*" Cal. Health & Safety Code § 11362.1(c) (emphasis added).

16 The search of Mr. Talley's car thus violated the Fourth Amendment, and all evidence seized as a result

17 of that search must be suppressed.

18

**FACTUAL BACKGROUND**

19 On July 24, 2019, Mr. Talley was pulled over by Officers Ishida and Griffin, of the San Francisco

20 Police Department, for driving his car in a bus lane. Leonida Decl. ¶ 2; Report of San Francisco Police

21 Officer John Ishida, Ex. A. at 109.[1] Mr. Talley pulled over promptly and complied with the officer's

22 directions. Leonida Decl. ¶ 5, 4; Preliminary Hearing Testimony of John Ishida, Ex. D, at 140; Video

23 from Glennon Griffin's body worn camera, Ex. C. Mr. Talley had a valid driver's license, current

24 registration, and proof of insurance for the vehicle. Ex. D, at 140.

25 Officer Griffin approached the car first and went to the driver's side window to talk to Mr.

26 Talley. Ex. C, at 0:30. Mr. Talley rolled down his window and greeted Officer Griffin. *Id.* at 0:36.

27

28

---

[1] All page numbers refer to the government Bates numbers.

MOTION TO SUPPRESS EVIDENCE
*U.S. V. TALLEY*, CR 19–605 RS

1   Officer Griffin explained why they had pulled him over and asked for his driver's license, which Mr.

2   Talley provided. *Id.* at 0:45. Although Mr. Talley did have his registration and insurance cards, it took

3   him a little while to find them in an envelope full of paperwork. Id. Officer Griffin told him to just

4   keep looking and to hand it to Officer Ishida when he found it. *Id.* at 1:30.

5          While speaking with Mr. Talley, Officer Griffin saw a small, closed plastic container of

6   marijuana in the car's center console. *Id.* at 1:41. The container's lid was closed; in order to open it

7   one would have to squeeze the sides together below the cap. Leonida Decl. ¶ 7; Photograph of

8   Container, Ex. F. Officer Griffin asked Mr. Talley about the container. Ex. C, at 1:42. Mr. Talley

9   picked it up and showed it to him—it was obviously closed. *Id.* at 1:46. Officer Griffin then walked

10  back to his patrol car and conducted a records check on Mr. Talley. *Id.* at 1:49.[2]

11         While Officer Griffin was talking to Mr. Talley, Officer Ishida approached the passenger's side

12  and started talking to the passenger about her dog. Leonida Decl. ¶3; Video from John Ishida's body

13  worn camera, Ex. B, at 0:16-0:35. He was still standing next to the passenger's side of the car when

14  Officer Griffin went to his patrol car to run Mr. Talley's license thirty seconds later. *Id.*, at 0:30-1:00.

15  Officer Ishida then walked around to the driver's side of the car and talked to Mr. Talley. *Id.*, at 1:25.

16  Approximately two minutes later, he ordered Mr. Tally out of his car and Officer Griffin began

17  searching it. *Id.*, at 3:50.

18         Officer Ishida, who was the investigating officer, later claimed that Officer Griffin had made the

19  decision to search the car. He testified at a state court preliminary hearing that: "during the course of

20  the traffic stop, Officer Griffin advised me that he had observed marijuana in – a [sic] unsealed

21  container of marijuana within the vehicle and advised me that we would be conducting a search of

22  the vehicle." Ex. D, at 132. Officer Ishida testified that Mr. Talley was then removed from the vehicle

23  *Id.*, at 132.

24         Officer Griffin's preliminary hearing testimony was similar to Officer Ishida's:

25                 Q: At what point during your initial contact with that gray Chrysler did you spot this

26                 open container of marijuana?

27  _____

28  [2] Mr. Talley had no outstanding warrants and was not on probation or parole.

A: While speaking with the driver prior to going back to my vehicle to conduct any sort of check of his license.

Q: What happened next?

A: Next, I removed the driver from the vehicle, instructed my partner he would be removed for being in possession of the open container of marijuana.

Leonida Decl. ¶6; Preliminary Hearing Testimony of Glennon Griffin, Ex. E, at147; see also *Id.*, at 151 ("Q: And then you had him step out of the vehicle after he showed you the marijuana; A: that is correct.").

A review of the body camera footage of this incident reveals a wholly different version of events. Officer Ishida's body camera shows that he called dispatch to request "a unit, Code 1, for a search, quick" almost immediately. Ex. B, at 1:18. Officer Griffin did not "remove the driver from the vehicle" upon seeing the marijuana container; nor did he "instruct his partner" of a lawful justification for a search. Ex. C, at 1:41–4:34. In fact, a comparison of the two officer's body camera footage reveals that Officer Ishida requested a unit "for a search" without having any conversation whatsoever with Officer Griffin. *Compare* Ex. B 0:30-1:18; Ex. C 0:45-2:06.

After he called for a search unit, Officer Ishida walked over to the driver's side of the car. Ex. B, at 1:25. Rather than immediately removing Mr. Talley from the vehicle, Officer Ishida spent the next several minutes chatting with Mr. Talley as the latter searched for his insurance paperwork. Mr. Talley showed the officer a business card for the legal marijuana delivery business he and his cousin had started and Officer Ishida assured him that he was not in trouble for transporting marijuana. *Id.* at 3:03 ("It's 2019 California, as long as it's sealed and all that.").

Nonetheless, Mr. Talley was later ordered from his vehicle, searched, and handcuffed while officers searched his vehicle. That search revealed a firearm, ammunition, and several cell phones. Ex. A.

ARGUMENT

1.     **The Government Bears the Burden of Justifying the Warrantless Search of Mr. Talley's Car**

The inquiry into the constitutionality of a warrantless search begins "with the basic rule that

1   'searches conducted outside the judicial process, without prior approval by judge or magistrate, are

2   *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and

3   well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*,

4   389 U.S. 347, 357 (1967)). Given that warrantless searches are *per se* unreasonable, "the government

5   bears the burden of showing that a warrantless search . . . falls within an exception to the Fourth

6   Amendment's warrant requirement." *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012).

7   When the government fails to carry its heavy burden, *id.* at 1142 n.1, all fruits of the Fourth

8   Amendment violation must be suppressed. *Id.* at 1143.

9       Here, San Francisco Police officers searched Mr. Talley's car without a warrant or probable

10  cause. The government cannot meet its burden to show that the warrantless search of Mr. Talley's

11  vehicle fell within an exception to the warrant requirement. All fruits of the unconstitutional search

12  must therefore be suppressed.

13      **2.      The Warrantless Search of Mr. Talley's Vehicle Violated the Fourth Amendment
14              Because the Officers Lacked Probable Cause**

15      The government cannot rely on the automobile exception to the warrant requirement to justify

16  the search of Mr. Talley's car. A warrantless search of an automobile is reasonable under the Fourth

17  Amendment only where officers have "probable cause to believe that the vehicle contains

18  contraband" such that the "facts . . . would justify the issuance of a warrant, even though a warrant

19  has not actually been obtained." *United States v. Ross*, 456 U.S. 798, 808-809 (1982). Probable cause

20  exists when, under the totality of the circumstances, "there is a fair probability that contraband or

21  evidence of a crime will be found in a particular place." *United States v. Luong*, 470 F.3d 898, 902 (9th

22  Cir. 2006). The inquiry into probable cause is particularized and based on the "objective facts known

23  to the officer at the time of the search." *United States v. Rodgers*, 656 F.3d 1023, 1029 (9th Cir. 2011).

24  "Police 'obtain probable cause because the *facts* indicate that they will find what they are looking for

25  in the place to be searched.'" *Id.* (quoting *United States v. Johnson*, 256 F.3d 895, 906 (9th Cir. 2001))

26  (emphasis in original).

27      At the time Officer Griffin searched Mr. Talley's car, he did not have probable cause to believe

28  it contained evidence of a crime. Absent independent suspicion, the traffic stop gave Officers Griffin

1    and Ishida no authority to investigate anything beyond the traffic violation, let alone to search the car.

2    *See Rodriguez v. United States*, 575 U.S. 348, 357-8 (2015). Officer Ishida's body camera reveals that

3    he requested a unit to assist with searching the car within a minute of approaching the passenger

4    door—and without having any conversation whatsoever with Officer Griffin. Given Officer Ishida's

5    sworn testimony that he never saw marijuana in the vehicle, Ex. D, at 140, his decision to search the

6    vehicle was, at best, based on an unsupported hunch.

7         Furthermore, even if the decision to search Mr. Talley's car was based on the presence of a

8    small, closed container of marijuana in the center console, the search still violated the Fourth

9    Amendment. The closed container of marijuana was transported in compliance with California law

10   and an officer's erroneous understanding of that law cannot justify a warrantless search.

11         **2.1 The Warrantless Search of Mr. Talley's Vehicle Cannot Be Justified by the Presence**

12   **        of a Closed Container of Marijuana Inside His Car**

13         California law regulating marijuana has changed dramatically over the past several decades. As

14   social and legal values surrounding the possession and use of marijuana have become increasingly

15   more permissive, the law has become increasingly less prohibitive. This "sea-change" in the way

16   California law approaches marijuana culminated in the passage of Proposition 64 by the voters in

17   November 2016. *People v. Lin*, 236 Cal. Rptr. 3d 818, 821 (Cal. App. Dep't Super. Ct. 2018).

18   Proposition 64 decriminalized the possession of less than 28.5 grams of marijuana by persons 21 years

19   or older. *See* Cal. Health & Safety Code § 11357(b)(2). As codified, it provides that "cannabis and

20   cannabis products involved in any way with conduct deemed lawful by this section are not

21   contraband nor subject to seizure, and no conduct deemed lawful by this section shall constitute the

22   basis for detention, search or arrest." *Id.* § 11362.1(c).

23         Among the Legislature's responses to Proposition 64 was to amend California's open container

24   law. Prior to the amendments, Vehicle Code Section 23222(b) had prohibited any possession of

25   marijuana while driving. 2010 Stats., ch. 708 (S.B. 1449), § 2 (West's Cal. Legis. Service). As

26   substantially amended in June 2017, the statute now reads:

27              Except as authorized by law, a person who has in their possession on their
               person, while driving a motor vehicle . . . a receptacle containing cannabis
28              or cannabis products . . . which has been opened or has a seal broken, or

loose cannabis flower not in a container, is guilty of an infraction
punishable by a fine or not more than one hundred dollars ($100).

Cal. Veh. Code § 23222(b)(1) (as substantially amended by Stats. 2017, ch. 27 (S.B. 94) (West's Cal.
Legis. Service)). The amended statute's intended application was limited. According to the Senate
Floor Analysis, the amendment created "a new infraction if a person has *opened* cannabis or cannabis
products in the car." Sen. Rules Com., Off. Of Sen. Floor Analysis, Analysis of Sen. Bill 94 (2017-2018
Reg. Sess.) as amended June 9, 2017 (emphasis added).

Mr. Talley did not violate California's open container law because the small container of
marijuana on his center console was closed. Because he lawfully possessed it, the container could not
then serve as the basis for the search of his car.

### 2.1.1  The Container of Marijuana in Mr. Talley's Car Was Not an "Open Container" Under California Law

The container of marijuana in Mr. Talley's car was not an open container within the meaning
of Section 23222(b)(1). In *People v. Shumake*, the Appellate Division of the Alameda County Superior
Court held that a driver's possession of a closed but not "sealed" plastic container of marijuana did
not violate that statute. __Cal. Rptr. 3d at __, 2019 WL 8128736 at *2, *4 (Cal. App. Dep't Super. Ct.
2019). In *Shumake*, a Berkeley police officer pulled over a driver for a Vehicle Code violation. *Id.*
When she spoke to the driver, the officer smelled marijuana and asked him if he had any. *Id.* He said
that he did, in the center console. *Id.* Thinking that marijuana had to be in a "closed, heat-sealed
package" when transported and that such packaging would eliminate the smell, she believed the
driver was violating Section 23222(b) and proceeded to search the car. *Id.* She quickly discovered a
plastic tube containing loose marijuana flower buds. *Id.* The plastic tube was closed and "could be
opened by squeezing the sides of the tube, which flexed the top open." *Id.* Justifying her continued
search on this discovery, the officer then found a firearm in the car. *Id.*

*Shumake* held the search unlawful and suppressed the firearm. *Id.* at *4. The court ruled that
possession of the closed container of marijuana was lawful despite the fact that it was not "sealed"
and that the officer's "belief that any cannabis being transported in a vehicle must be in a heat-sealed
container is not supported by the plain language of Section 23222(b)(1)." *Id.* at *2. *Shumake* explicitly

1  rejected the argument that the officer's discovery of a closed container of marijuana provided

2  probable cause to believe there was more marijuana in the car. *Id.*; *see also People v. Lee*, 40

3  Cal.App.5th 853, 866 (4th Dist. 2019) ("possession of a small and legal amount of marijuana provides

4  scant support for an inference that [the] car contained contraband").

5      The facts here are indistinguishable from *Shumake*. Just as in *Shumake*, the container of

6  marijuana in Mr. Talley's center console was a closed plastic tube containing loose marijuana flower

7  buds. *See id.*; Ex. F. The container could only be opened by squeezing the sides, which flexed open the

8  top. *Id.* Just as in *Shumake*, Mr. Talley was forthright about his possession of the container. *See* 2019

9  WL 8128736 at *1; Ex. E, at 1:46. He picked it up and showed it to Officer Griffin. Ex. E, at 1:46. The

10  footage from Officer Griffin's body camera clearly shows that the container was closed. *Id.* Officer

11  Griffin's erroneous opinion that the container should have been "sealed" cannot justify his search of

12  Mr. Talley's car. *See Shumake*, 2019 WL 8128736 at *2.

13      A comparison of this case with *People v. Fews*, 27 Cal.App.5th 553, 563 (1st Dist. 2018) further

14  highlights the flaws in the justification offered by Officers Ishida and Griffin for their search of Mr.

15  Talley's car. *Fews* held that a search of a vehicle was justified where officers: (1) observed the

16  defendant driving erratically; (2) noted that he did not comply with the officer's instructions after

17  pulling over; (3) saw the defendant make multiple furtive movements; (3) smelled recently burned

18  marijuana; and (4) saw a "half-burnt, flattened, and rerolled cigar" in the vehicle. *Id.* at 556-57, 563.

19  The search in that case was justified because a half-burnt marijuana cigar is, literally, an open

20  container of marijuana—and the odor of freshly burnt marijuana and erratic driving supported an

21  inference that the driver had been operating a vehicle under the influence. *Id.* at 563. The *Shumake*

22  court contrasted that factual scenario with the facts before it—no violation of the open container law,

23  no partially smoked cannabis in plain view, no erratic driving—and found that the justification for

24  the search in *Fews* simply did not apply there. 2019 WL 8128736 at *4. Here, also, the small container

25  of marijuana in Mr. Talley's car was closed, there was no odor of burnt marijuana, and Mr. Talley's

26  actions gave no indication whatsoever that he might be under the influence.

27      **2.2.2   The container was not on Mr. Talley's person**

28  Furthermore, Section 23222(b)(1) prohibits transportation of open containers of marijuana

1  only when the driver has the container "in their possession *on their person.*" *See* Cal. Veh. Code §

2  23222(b)(1) (emphasis added). A California appellate court has held that the statute's parallel alcohol

3  provision is "not violated unless the evidence establishes that the open container of alcohol was

4  connected to the person of the defendant[.]" *People v. Squardere*, 88 Cal.App.3d Supp. 1, 4 (App. Div.

5  Dep't Super. Ct. 1978). Here, the container was in the center console.

6  **CONCLUSION**

7  As codified, Proposition 64 provides that "[c]annabis and cannabis products involved in any

8  way with conduct deemed lawful . . . are not contraband nor subject to seizure, and *no conduct*

9  *deemed lawful by this section shall constitute the basis for detention, search or arrest.*" Cal. Health &

10  Safety Code § 11357(b)(2) (emphasis added). Marijuana lawfully possessed in a closed container

11  cannot serve as the basis for a search during a traffic stop. *Shumake*, 2019 WL 8128736 at *2. As

12  conduct deemed lawful under Proposition 64, Mr. Talley's possession of the closed container of

13  marijuana was an impermissible basis on which to search his car. *See* Cal. Health and Safety Code §

14  11362.1(c); *Shumake*, 2019 WL 8128736 at *2. Thus, all evidence seized as a result of the unlawful

15  search must be suppressed.

16  Dated: May 12, 2020

17                                                  Respectfully submitted,

18                                                  STEVEN G. KALAR
                                                    Federal Public Defender

19
                                                       ___/S/_____
20                                                  ELLEN V. LEONIDA

21                                                  Assistant Federal Public Defender

22

23

24

25

26

27

28